**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 09-668 |
| | : | |
| JOSEPH CASILE | : | |

**MEMORANDUM RE: DEFENDANT'S POST VERDICT MOTIONS**

Baylson, J.                                                                           **May 2, 2011**

**I.      Introduction**

On October 14, 2009, a federal grand jury returned an indictment charging Defendant

Joseph Casile with one count of stalking in violation of 18 U.S.C. § 2261A, interstate travel with

intent to harass or intimidate.  On November 5, 2010, after a jury trial, Casile was found guilty as

to the count charged in the Indictment.  On November 15, 2010, Casile filed a Motion for

Acquittal, Motion for New Trial, and Motion to Supplement (ECF No. 98), requesting relief

under Federal Rules of Criminal Procedure 29, 33, and 34.  On March 4, 2011, Casile filed a

Supplemental Motion for Judgment of Acquittal and for New Trial (ECF No. 106).  These

Motions are presently before the Court.

Casile's core arguments are that 1) 18 U.S.C. § 2261A was not intended to apply to his

conduct; 2) the Government did not present sufficient evidence to establish Casile committed the

crime charged; 3) the Government presented evidence that constructively amended or was in

variance with the Indictment; and 4) the Court failed to give Casile's proposed theory of defense

instruction.  For the reasons discussed below, Casile's Motions for post-verdict relief are denied.

**II.      Factual and Procedural History**

Casile is a Pennsylvania resident.  (See Tr. 11/3/10 at 240.)  On October 17, 2004, John Fagan asked Casile to meet him at Olga's Diner, in Marlton, New Jersey.  At that meeting, Fagan told Casile that George "Pat" Bell and John Bell had approximately $400,000 of Fagan's illegally-obtained cash.  Fagan asked Casile to assist in retrieving the money from the Bells.  Casile agreed to do so in exchange for ten percent of the $400,000.  (Tr. 11/3/10 at 190-91, 276.)

On November 18, 2004, Casile and several other men went to Johnny Apples, the Bells' restaurant in Bucks County, Pennsylvania.  Casile approached Pat Bell, who was bartending, and demanded that the money be returned within a short time period, while other men surrounded them.  (Tr. 11/3/10 at 32-35, 64-65, 191-92, 276-77.)  Pat Bell testified that he felt threatened and scared.  (Tr. 11/3/10 at 35, 69-70.)  On November 19, 2004, John Bell received several threatening calls from Casile, who identified himself as Frank or Joe.  Casile demanded that John Bell return the money to him in Philadelphia within the hour, or else there would be problems and Bell would suffer the consequences.  (Tr. 11/3/10 at 98-101, 105-07.)  Later, Casile called John Bell from Princeton Tavern, a bar that John Bell operated in Northeast Philadelphia, said that he was at the bar with six associates, and threatened the patrons and the bartender.  (Tr. 11/3/10 at 9, 109-12.)  John Bell testified that Casile threatened his family and that Bell was concerned for their safety.  (Tr. 11/3/10 at 111-12.)  As a result of the incidents on November 18th and 19th, police provided assistance at Johnny Apples, surveilled Pat Bell's residence, and quarantined John Bell and his mother for several days at their residence with 24-hour-a-day police protection, out of concern for the physical safety of the Bell family.  (Tr. 11/2/10 at 165-66; Tr. 11/3/10 at 114-15, 178-82, 283-85.)

Casile was indicted by a federal grand jury on October 14, 2009. The Court denied

Casile's Motion to Dismiss the Indictment, United States v. Casile, Crim No. 09-668, 2010 WL

3835006 (E.D. Pa. Sept. 30, 2010), and the case proceeded to trial.

At the close of the government's case, Casile moved for judgment of acquittal pursuant to

Federal Rule Criminal Procedure 29(a). The Court reserved judgment on the motion. On

November 5, 2010, the jury found Casile guilty of the count charged in the indictment. On

November 15, 2010, Casile renewed his Motion for Acquittal and also moved for new trial and

arrest of judgment, pursuant to Fed. R. Crim. P. 29(c), 33, and 34 (ECF No. 98).[1] On March 4,

---

[1]     In his initial Post-Trial Motion, Casile moved for judgment of acquittal under Rule 29(c) on six grounds:
         1) the statute Casile was charged with violating was not intended to address his conduct;
         2) the government did not prove compliance with the statute of limitations;
         3) the government did not prove that Casile possessed the required intent at the time he engaged in the prohibited interstate travel;
         4) the government failed to prove a nexus between Casile's interstate travel and the prohibited intimidation or harassment;
         5) the government failed to prove that the significant or dominant purpose of Casile's interstate travel was the intent to harass or intimidate; and
         6) there was an impermissible amendment or variance from the indictment.
         Casile also moved for a new trial under Rule 33(a) for five reasons, which overlapped with his arguments for judgment of acquittal:
         1) the verdict was against the weight of the evidence;
         2) the court erred by failing to instruct the jury as to: a) the elements of the offense as requested in Casile's proposed jury instructions; b) measuring intent at the time of the alleged interstate travel; c) the significant dominant purpose of the interstate travel had to be intent to harass or intimidate; d) the causal link between the interstate travel and harm to the victim; and e) Casile's proposed theory of defense;
         3) the court erred by allowing evidence of Casile's recorded conversations while he was housed at the Federal Detention Center in Philadelphia;
         4) the court erred by allowing evidence of Fagan's drug dealing activities; and
         5) the court erred by submitting the case to the jury without requiring the government to prove a singular victim.
         Additionally, Casile moved pursuant to Fed. R. Crim. P. 34 for arrest of judgment because:

2011, Casile filed a Supplement to the Post-Verdict Motion (ECF No. 106). The Government

filed its response on March 25, 2011 (ECF No. 112). Casile replied on April 19, 2011 (ECF No.

118).

## III.    The Parties' Contentions

In his Supplement to the Post-Verdict Motion, Casile raised four arguments in favor of

judgment of acquittal.  First, Casile contends that Congress did not intend 18 U.S.C. § 2261A to

criminalize interstate travel that was "merely incidental" or "not substantially related" to the

harassment or intimidation.  Second, Casile contends there was insufficient evidence to show that

he had the intent to harass or intimidate at the time he crossed state lines from New Jersey to

Pennsylvania.  Third, Casile contends that the government failed to prove a causal connection

between the interstate travel and the resulting intimidation or harassment.  Fourth, Casile argues

that there was a prejudicial variance or constructive amendment because the evidence established

multiple victims and the indictment alleged a single victim.

Casile also asserts that he is entitled to a new trial on the above grounds, and because the

Court did not instruct the jury that the significant or dominant purpose of his travel must be an

intent to intimidate or harass.  Furthermore, Casile contends that he is entitled to a new trial

---

1) the statute under which he was charged was not intended to address his conduct;
2) the government did not prove compliance with the statute of limitations; and
3) the government failed to establish jurisdictional facts.
   Casile further renewed his request for relief in his December 28, 2009 pretrial motion,
including but not limited to relief based on lack of jurisdiction and preaccusatory delay.
   The Supplement to Post-Verdict Motion briefed many, but not all, of these arguments.
The Court evaluates here the arguments briefed by the parties.

because the Court did not instruct the jury to measure the defendant's intent at the time of travel, and the Court failed to provide Casile's proposed theory of defense instruction to the jury.

The Government responds that the plain language of 18 U.S.C. § 2261A does not require proof that the defendant's travel was "substantially related" to the harassment or intimidation. The Government contends that the evidence at trial established that Casile had the requisite intent to harass or intimidate at the time he traveled from New Jersey to Pennsylvania. The Government argues that it proved the Bells were placed in reasonable fear of serious bodily injury or death as a result of Casile's interstate travel. The Government asserts that it did not constructively amend the indictment or present evidence in a prejudicial variance from the indictment as to the number of victims. Finally, the circumstances did not warrant the Court giving the proposed theory of defense instruction.

## IV.    Standard of Review

### A.    Fed. R. Crim. P. 29

"'In reviewing a jury verdict for sufficiency of the evidence, we must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt.'" United States v. Gatlin, 613 F.3d 374, 380 (3d Cir. 2010) (quoting United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993)). If the defendant moved for a judgment of acquittal and the district court reserved judgment at the close of the government's case-in-chief, the district court is limited to the evidence at that point. Fed. R. Crim. P. 29(b); United States v. Boria, 592 F.3d 476, 480 n.7 (3d Cir. 2010). "'The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high.'" United States v. Starnes, 583 F.3d 196, 206 (3d

Cir. 2009) (quoting United States v. Iglesias, 535 F.3d 150, 155 (3d Cir. 2008)). "A finding of insufficiency should be 'confined to cases where the prosecution's failure is clear.'" United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (quoting United States v. Smith, 294 F.3d 473, 477 (3d Cir. 2002)). A district court may not "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." Id. (citing United States v. Jannotti, 673 F.2d 578, 581 (3d Cir. 1982) (en banc)).

**B.     Fed. R. Crim. P. 33**

Under Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "'Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instad exercises its own judgment in assessing the Government's case.'" United States v. Silveus, 542 F.3d 993, 1004 (3d Cir. 2008) (quoting United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002)). "However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred–that is, that an innocent person has been convicted.'" Id. at 1004-05 (quoting Johnson, 302 F.3d at 150). A Rule 33 motion should be "granted sparingly and only in exceptional cases." Gov't of V.I. v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted).

**C.     Fed. R. Crim. P. 34**

Under Rule 34, "[u]pon the defendant's motion or on its own, the court must arrest judgment if: (1) the indictment or information does not charge an offense; or (2) the court does

not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a). A motion for arrest of judgment must be based on a defect on the face of the indictment, and not upon the evidence or its sufficiency. United States v. Sisson, 399 U.S. 267, 282 (1970) (citing Bond v. Dustin, 112 U.S. 604, 608 (1884)). To withstand a Rule 34 motion, a sufficient indictment "recites the necessary elements of an offense, and. . . does not allege facts that themselves demonstrate the availability of a constitutional privilege." See id. at 288.

## IV. Discussion

18 U.S.C. § 2261A(1) provides, in relevant part:

Whoever. . . travels in interstate or foreign commerce. . . with the intent to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel places that person in reasonable fear of the death of, or serious bodily injury to, or causes substantial emotional distress to that person, a member of the immediate family. . . of that person, or the spouse or intimate partner of that person. . . shall be punished.

18 U.S.C.A. § 2261A(1) (West 2011). The Government must prove three elements to establish a statutory violation:

(1) the defendant traveled in interstate commerce as charged in the indictment;

(2) the defendant traveled in interstate commerce with the intent to harass or intimidate the victim; and

(3) in the course of or as a result of such travel, the victim was placed in reasonable fear of the death of or serious injury to himself or a member of his immediate family.

United States v. Bowker, 372 F.3d 365, 388 (6th Cir. 2004), vacated on other grounds 543 U.S. 1182 (2005); United States v. Wills, 346 F.3d 476, 493-94 (4th Cir. 2003); United States v.

Al-Zubaidy, 283 F.3d 804, 808 (6th Cir. 2002); see Sand, Modern Federal Jury Instructions-Criminal § 63.03.

The interstate stalking statute is an exercise of Congress's power to regulate channels of commerce under the Commerce Clause of Article I, Section 8, Clause 3 of the U.S. Constitution, because the statute "prohibit[s] persons from crossing state lines to engage in unlawful conduct." Al-Zubaidy, 283 F.3d at 812 (citing United States v. Faasse, 265 F.3d 475, 490 (6th Cir. 2001)).[2]

## A.    Congressional Intent

In his Post-Verdict Motion, Casile asks the Court to read additional requirements into the statute based primarily on its legislative history, including that 1) the interstate travel is "substantially related" to the harassment or intimidation, and 2) the intent to harass or intimidate is a "significant or motivating factor" for the interstate travel.  Applying principles of statutory interpretation, the Court finds these arguments are without merit.

Time and again, the Supreme Court has instructed that statutory interpretation "begin[s] with the text of the statute."  Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct.

---

[2]    In United States v. Lopez, 514 U.S. 549, 115 (1995), the Supreme Court held that Congress may regulate "three broad categories of activity" pursuant to its authority under the Commerce Clause: (1) "the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce," and (3) "those activities that substantially affect interstate commerce."  Id. at 558-59 (holding that the Gun-Free School Zones Act of 1990 was an unconstitutional exercise of Congress's Commerce Clause authority).

The federal courts that have had occasion to consider the constitutionality of 18 U.S.C. § 2261A have ruled that it is a permissible regulation of interstate commerce under Lopez.  See Al-Zubaidy, 283 F.3d at 811-12; United States v. Vollmer, 1 F. App'x 573, 573 (8th Cir. 2001) (non-precedential); United States v. Young, 202 F.3d 262, 1999 WL 1203783 (4th Cir. 1999) (table); United States v. Rettinger, No. 4:06-cr-043, 2006 WL 3463424, at *3 (D.N.D. Nov. 28, 2006); United States v. Crawford, No. 00-CR-59-B-S, 2001 WL 185140, at *2 (D. Me. Jan. 26, 2001).

1325, 1331 (2011); see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530

U. S. 1, 6 (2000) (quoting Conn. Nat. Bank v. Germain, 503 U.S. 249, 254 (1992)) ("[W]e begin

with the understanding that Congress 'says in a statute what it means and means in a statute what

it says there.'").  The Court does not consider legislative history unless the language is

ambiguous–that is, "the text, taken alone, cannot provide a conclusive answer to [the]

interpretive question."  Kasten,131 S. Ct. at 1333; accord Ex Parte Collett, 337 U.S. 55, 61

(1949) ( "there is no need to refer to the legislative history when the statutory language is clear").

Here, the text of 18 U.S.C. § 2261A is unambiguous.  The face of the statute says nothing

about establishing a substantial relationship between the interstate travel and the resulting

harassment or intimidation.  The text also does not state that the intent to harass or intimidate

must be a significant or motivating factor for the interstate travel.  The plain language contradicts

Casile's argument that the Government was required to prove more than the basic three elements

listed above for the jury to find Casile guilty of the charge.  Because the text is clear, there is no

need to examine legislative history to divine Congressional intent.

However, the Court briefly comments on the legislative history, which both parties

briefed.  Much of the Congressional testimony discussing the anti-stalking legislation before its

passage concerned the protection of stalking victims who flee across state lines, only to be

pursued by their stalker to the new state.  Rep. Randy Tate discussed the following hypothetical:

> The stalker wants to make sure that the victim never feels safe.  No matter the
> woman's efforts to end this, the stalker wants to make sure she never feels free.
> He knows where she works, where her family lives and who her friends are.  So
> the terrified woman flees to other States, sometimes fleeing across-country,
> leaving her friends, her family and everyone she knows just to get away from the
> threat of abuse. Then one day she walks out of her new home in her new State and

she sees him down the street waiting for her, and she wonders if the nightmare will end.

142 Cong. Rec. H 4457, 4459 (daily ed. May 7, 1996) (statement of Rep. Tate). Senator Kay

Bailey Hutchison similarly described a set of facts to which the proposed bill would apply:

> A woman from California who was constantly threatened, who moved to Florida to escape this stalking from this person that she really did not know and who was clearly demented–she moved to Florida and one night did become a victim. . . The Interstate Stalking Act will make it a Federal crime to cross State lines to do the State crime of stalking. It does not make stalking a Federal crime, but it does make crossing State lines to do it, when it is a crime, a crime. That would give protection to the woman who moved from California to Florida.

142 Cong. Rec. S 5625, 5626 (May 23, 1996) (statement of Sen. Hutchison). Many of these

hypothetical scenarios referred to the victim as a woman, even though 18 U.S.C. § 2261A, a

gender-neutral provision, broadened the anti-stalking provision of the Violence Against Women

Act of 1994 to include victims other than persons in an intimate relationship with the harasser.[3]

The Court acknowledges that the Congressional debates did not discuss similar facts to this case,

---

[3]  18 U.S.C. § 2261A was an expansion of the anti-stalking provision of the Violence Against Women Act of 1994, 18 U.S.C. § 2261, which was limited to protection for spouses, intimate partners, or dating partners. Senator Duncan McLauchlin Faircloth explained that "the protection of stalking victims should be universal and apply to all victims, whether they are a wife, a girlfriend, a coworker, or a total stranger." 142 Cong Rec S 9442, 9442 (daily ed. Aug. 1, 1996) (statement of Sen. Faircloth). Senator Kay Bailey Hutchison similarly described the bill as intended to "allow victims of any kind of domestic violence harassment or if it is not a domestic partner or a spouse but a stranger who is doing the harassment, it will also provide protection if a person crosses State lines to do that." 142 Cong. Rec. S 5625, 5626 (May 23, 1996) (statement of Sen. Hutchison). Rep. Bill McCollum discussed the need for federal jurisdiction over interstate stalking, because "[w]hen a stalker operates across State lines, or travels in other areas within the jurisdiction of the federal government, it is very difficult for local law enforcement to conduct an effective investigation. In these instances, it is the proper role for federal law enforcement to investigate and prosecute the crime." H.R. Rep. No. 104-557 (1996).

in which the defendant traveled from one state back to his home state, and the victim remained in the defendant's home state, where the harassment and intimidation occurred.

Nevertheless, the Court may apply a statute to hold a defendant liable for any conduct covered by the plain language of the text, even if the legislative history only discussed application of the statute in an unrelated context. The Supreme Court addressed this principle in Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985), in the context of the Racketeer Influenced and Corrupt Organizations Act ("civil RICO"), 18 U.S.C. § 1964(c). In Sedima, the Supreme Court reversed the Second Circuit's decision, which required the plaintiff to allege a "racketeering injury" and criminal conviction of a predicate offense to state a civil RICO claim, because the statute was silent on these issues. Id. at 485, 495 ("[C]ongressional silence, no matter how 'clanging,' cannot override the words of the statute."). The Supreme Court refused to graft requirements onto civil RICO to limit its applicability to cases involving "mobsters and organized criminals"–the targets originally contemplated by Congress–and exclude "everyday fraud cases brought against respected and legitimate enterprises" from its reach. Id. at 499 (citations and internal quotation marks omitted). The Supreme Court acknowledged that "in its private civil version, RICO is evolving into something quite different from the original conception of its enactors." Id. at 500. Nevertheless, the statutory text, which forbade racketeering activities by "any person," permitted the broad application of civil RICO to facts outside of the organized crime context. Id. at 495, 500.

Similarly, the plain language of 18 U.S.C. § 2261A criminalizes any act of interstate travel with the intent to harass or intimidate another person, regardless of the harasser's or the victim's state of residence. Nor will the Court read additional requirements into the text where

the statute is silent. Therefore, the Court rejects Casile's contentions that the interstate stalking statute was inapplicable to his conduct; that the Government needed to prove a substantial relationship between the travel and the harassment; and that the Government needed to establish that the significant or dominant purpose of the travel was the intent to harass or intimidate. The Court will not grant Casile post-verdict relief on these grounds.

### B.     Sufficiency of the Evidence

Casile does not dispute that the evidence at trial established that he met with John Fagan in New Jersey on October 17, 2004; that he went to Johnny Apples in Pennsylvania on November 18, 2004 to demand that the Bells return Mr. Fagen's money, or that he made a series of threatening telephone calls. Def.'s Post Verdict Mot. 4. Rather, Casile contends that the evidence was insufficient to show a) that he had the requisite intent at the time of the interstate travel, and b) that the harassment and intimidation occurred as a result of the interstate travel.

As discussed above, the second of the three elements of the offense, in accordance with the statutory text, requires the Government to establish that the defendant traveled in interstate commerce with the intent to harass or intimidate the victim. Under Section 2261A, "coverage is clearly limited to violence or harassment that occurs during or after interstate travel." See United States v. Page, 167 F.3d 325, 329 (6th Cir. 1999) (comparing the requirements of 18 U.S.C. §§ 2261A, 2261, and 2262). The Government may present circumstantial evidence to establish when the interstate travel occurred. United States v. Young, 202 F.3d 262, 1999 WL 1203783, at *2-3 (4th Cir. 1999) (table) (circumstantial evidence of interstate travel including showing that the defendant called the victim from Maryland in the morning, and met her in person at her office in Washington, D.C. at noon; witness testimony that the defendant picked up his delivery truck in

the morning in Maryland, and later made deliveries in Virginia and the District of Columbia; and the victim's testimony that the defendant delivered to her office in the District of Columbia a ring that she left in his apartment in Maryland two weeks earlier).

In United States v. Al-Zubaidy, 283 F.3d 804 (6th Cir. 2004), the defendant argued that he was entitled to judgment of acquittal because the government failed to establish that he crossed state lines with the intent to injure or harass the victim. Id. at 808. The Sixth Circuit agreed with the defendant that "§ 2261A requires more than a showing that he crossed a state line and then later stalked [the victim]," but rather the defendant "must have intended to harass or injure [the victim] at the time he crossed the state line." Id. at 809. However, the court rejected the defendant's contention that the evidence was insufficient to establish the required intent, because "'intent may be inferred from the totality of circumstances surrounding the commission of the prohibited act.'" Id. (quoting United States v. Stagman, 446 F.2d 489, 493 (6th Cir. 1971)).[4] In Al-Zubaidy, the Sixth Circuit held that "[a] rational trier of fact would have no difficulty finding the defendant guilty beyond a reasonable doubt [of interstate stalking] under this evidence," which included crossing state lines several days after his ex-wife moved states; having minimal legitimate motives to follow his ex-wife to another state; making threatening calls to his ex-wife's father's home several days after the travel; and harassing his ex-wife in

---

[4]    In a related argument, Casile contends that he is entitled to a new trial because the Court failed to instruct the jury that the defendant's intent was to be measured at the time of the time. However, Al-Zubaidy refers to "circumstances surrounding the commission of the prohibited act," without limiting those circumstances to the day, hour, or minute of the act of travel. Therefore, the Court rejected Casile's proposed instruction that the jury has to measure intent at the time of the travel. (Tr. 11/4/10 at 117.)

person two months after the travel. Id. at 809-10 (affirming the district court's denial of the motion for judgment of acquittal).

Here, as in Al-Zubaidy, a rational juror could infer from the totality of the evidence that Casile possessed the intent to harass or intimidate at the time he traveled to Pennsylvania from New Jersey, following his October 17, 2004 meeting with Fagan at which he agreed to collect the illegally-obtained money from the Bells. The evidence showed that, as a result of the meeting in New Jersey, Casile went to Johnny Apples in Pennsylvania on November 18, 2004 to harass and intimidate Pat Bell to return Fagan's money; that the following day he went to Princeton Tavern in Pennsylvania to harass and intimidate John Bell to deliver the money; that Casile made a number of threatening phone calls to the Bells around this time; and that the Bells were concerned for the safety of themselves and their family members. The Government presented sufficient evidence to establish the elements of the offense.

## C.     Prejudicial Variance or Constructive Amendment

Casile contends that the government erred by either constructively amending the indictment or alternatively, presenting evidence that varied from the indictment with respect to the identity of the victim.

Constructive amendment of an indictment occurs when "'the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged.'" United States v. Vosburgh, 602 F.3d 512, 532 (3d Cir. 2010), cert. denied., __ S. Ct. __, 2011 WL 1103391 (2011) (quoting United States v. Daraio, 445 F.3d 253, 259-60 (3d Cir. 2006)). The court's

"'key inquiry is whether the defendant was convicted of the same conduct for which he was indicted.'" Id. (quoting Daraio, 445 F.3d at 260). An example of a case in which a trial court's jury instructions constructively amended the indictment is United States v. McKee, 506 F.3d 225 (3d Cir. 2007). In McKee, the court instructed the jury to consider the defendants' failure to report information and falsification of books and records as conduct to establish employment tax evasion, although such conduct was not charged in the indictment. Id. at 229-30. The Third Circuit vacated the defendants' convictions because "the court's instructions had the effect of broadening the indictment to include conduct not charged in the indictment," of which the defendant had no notice before trial. Id. at 230.

A variance occurs "'where the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" Daraio, 445 F.3d at 261 (quoting United States v. Castro, 776 F.2d 1118, 1121 (3d Cir. 1985)). A variance results "in a reversible error only if it is likely to have surprised or otherwise has prejudiced the defense," in contrast to a constructive amendment, which is always reversible error. Id. (citing United States v. Schurr, 775 F.2d 549, 553-54 (3d Cir. 1985)). "To demonstrate prejudice from a variance, a defendant 'must show (1) that there was a variance between the indictment and the proof adduced at trial and (2) that the variance prejudiced some substantial right.'" Id. (quoting United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996)). An example of a case in which a prejudicial variance occurred is United States v. Camiel, 689 F.2d 31 (3d Cir. 1982). In Camiel, the Third Circuit affirmed a judgment directing a verdict of acquittal where the government had presented evidence in a confusing manner that complicated the jury's task of determining the guilt of each individual defendant. Id. at 38. The variance was prejudicial

because "the volume and manner of presentation of the evidence created the likelihood of spillover: i.e., that the jury might have been unable to separate offenders and offenses and easily could have transferred the guilt from one alleged co-schemer to another." Id.

In this case, the indictment charged Casile with interstate travel with intent to harass or intimidate another person in violation of 18 U.S.C. § 2261A(1), from on or about October 17, 2004 to on or about November 19, 2004. Casile argues that the government failed to "elect or attempt to elect who was the 'singular person' referred to in the Indictment." Def.'s Post Verdict Mot. 13.

Here, no constructive amendment occurred. The Court charged the jury to consider the same conduct of which Casile was indicted:

> The third element which the Government must prove beyond a reasonable doubt is that in the course of or as a result of such travel, another person was placed in reasonable fear in the death of or serious injury to himself or an immediate family member.
>
> To establish this element, the Government must prove that as a result of Mr. Casile's conduct during or after the travel in interstate commerce, if you found such travel, an ordinary and reasonable person in the victim's position would have been in fear of death or serious bodily injury to himself or an immediate family member.

(Tr. 11/5/10 at 17). This jury instruction was consistent with the language of 18 U.S.C. § 2261A(1). Thus, unlike McKee, the jury instructions did not modify essential terms of this charged offense. See United States v. Wills, 346 F.3d 476, 493-94 (4th Cir. 2003) (jury instruction on interstate stalking that "tracks the language of both the interstate stalking statute and of the indictment" was not in error and did not amend the indictment). Nor did the evidence modify essential terms of the Indictment, resulting in the conviction of charges for which Casile

had no notice.  The Indictment referred to two victims, and it was clear from Casile's pre-trial motion papers and counsel's argument at trial that he had notice of the charge and evidence involving both John Bell and Pat Bell.  Casile was not deprived of any rights by virtue of the fact that the Government presented evidence of harassment of two victims, of whom he was aware, rather than a single victim.

Further, no variance occurred because the evidence at trial did not prove facts materially different than the crime alleged in the indictment.  The indictment need not name the victim in the charge, as long as the defendant had notice of the identity of the victim proven at trial.  See United States v. Moore, 198 F.3d 793, 796 (10th Cir. 1999) (holding that no prejudicial variance occurred where "the Indictment named the victim as Brent Byers," although the victim was his wife, Anne, because the defendant "was aware of the charges against him and presented his defense with the knowledge that Anne Byers was the alleged victim of the crime"); United States v. Von Stoll, 726 F.2d 584, 587 (9th Cir. 1984) (no prejudicial variance occurred where the indictment charged the defendant "with transporting money taken from McCallum and the proof showed it was taken from Hofer, McCallum's partner," because the inconsistency did not affect the defendant's substantive rights).  Even if a variance had occurred, Casile suffered no prejudice.  He had notice of and was not surprised by the evidence regarding his harassment and intimidation of John and Pat Bell.  In fact, Casile does not argue that he was surprised by any of the evidence or that he suffered any specific prejudicial effect on account of the charge in the Indictment referring to a "person" rather than "persons."  Casile concedes that "the government proved that the defendant intimidated and harassed by [sic] John and George [Pat] Bell."  Def.'s

Post Verdict Mot. 13. The Court will not grant post-verdict relief due to constructive amendment of or prejudicial variance from the Indictment.

### D. Theory of Defense Instruction

Lastly, Casile contends that he is entitled to a new trial because the Court failed to provide his proposed theory of defense instruction. Casile cites for support the general rule that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988) (citing Stevenson v. United States, 162 U.S. 313 (1896)). However, the defendant is only entitled to an instruction on a theory of defense if it (1) correctly states the law; (2) is supported by the evidence; (3) is not part of the charge; and (4) is necessary to prevent the defendant from being denied a fair trial. United States v. Hoffecker, 530 F.3d 137, 176 (3d Cir. 2008) (citation omitted). If the purported theory of defense instruction is merely "'a judicial narrative of [the defendant's] version of the facts,'" the trial court need not permit the instruction. Id. (quoting United States v. Barham, 595 F.2d 231, 244 (5th Cir. 1979)) (holding that the trial court did not abuse its discretion in refusing to give the defendant's proposed theory of defense instructions where they were argumentative, offered commentary on the evidence, and were duplicative of other instructions).

The omission of a particular charge from the jury instructions is reviewed "'in the context of the entire charge.'" United States v. Paolello, 951 F.2d 537, 539 (3d Cir. 1991) (quoting United States v. Turley, 891 F.2d 57, 62 (3d Cir. 1989)) (holding that in light of the jury charge as a whole, the district court did not adequately instruct the jury on the justification theory of the defense, which was supported by the defendant's evidence, and reversing the judgment of

conviction). In addition, the trial judge has "discretion to determine the language of the jury charge." United States v. Flores, 454 F.3d 149, 161 (3d Cir. 2006) (citing United States v. Goldblatt, 813 F.2d 619, 623 (3d Cir. 1987) (holding that the district court properly exercised its discretion and refused to give the defendant's gloss on the standard knowledge instruction in lieu of or in addition to "the general instruction on knowledge").

In this case, the Court did not refuse outright to give Casile's proposed instruction on Proof of Required Mental State/ Theory of Defense - Lack of Intent (Defendant's Request No. 12, ECF No. 75), which stated:

> The defendant, Joseph Casile, in part, raised as a defense that assuming you find he traveled from New Jersey into Pennsylvania on October 17, 2004, as alleged, the government failed to prove that he did so with the necessary intent to intimidate and harass. As I have instructed you earlier, to find Mr. Casile guilty, you must find, among other things, that when he traveled on October 17, 2004, he did so for the purpose of intimidating and harassing another. If you believe that Mr. Casile traveled as allege[d], but for some purpose other than intimidating and harassing, you must find him not guilty.

> Often, the state of mind with which a person acts at any given time (in this case, alleged intent to intimidate and harass) cannot be proved directly because one cannot read another person's mind and tell what he or she is thinking. However, Mr. Casile's state of mind (that is, whether on October 17, 2004 he traveled for the purpose of intimidating and harassing) can be determined from the surrounding circumstances. Thus, to determine Mr. Casile's state of mind on October 17, 2004, you may consider evidence about what Mr. Casile said, what Mr. Casile did or failed to do, when, in relation to the travel Mr. Casile did what he did or failed to do, the fact that Mr. Casile resided in Philadelphia, Pennsylvania, as well as all other facts and circumstances shown by the evidence that may prove what was in Mr. Casile's mind on October 17, 2004. It is entirely up to you to decide what evidence presented during trial proves or fails to prove about Mr. Casile's state of mind.

Rather, at the charge conference, the Court explained that the instruction would "be covered but not limiting it to October 17, 2004" by other instructions. ( Tr. 11/4/10 at 118.) The

Court did not give the instruction as worded by Casile because it incorporated an incorrect statement of the law, namely that Casile's intent had to be measured at the time of the travel. The Court explained at the charge conference that it would not instruct the jury to measure intent at the time of travel because "I don't think that's an element of the – of the crime. That's my ruling. . . ." (Tr. 11/4/10 at 117.)

In lieu of Casile's proposal, the Court gave the following instructions on intent:

The second element which the Government must prove beyond a reasonable doubt is that the defendant traveled in interstate commerce with the intent to kill, injure, harass, or intimidate another person. Direct proof of a person's intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated, that is of given time, he committed an act with a particular intent.

Such direct proof is not required. The ultimate fact of intent, though subjective, may be established by circumstantial evidence, based upon the defendant's outward manifestations; his word, his conduct, his acts, and all surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from it.

 (Tr. 11/5/10 at 17).

Often the state of mind with which a person acts at any given time cannot be proved directly because one cannot read another person's mind and tell what he or she is thinking. However, Mr. Casile's state of mind can be proved indirectly from the surrounding circumstances. Thus, to determine Mr. Casile's state of mind, what Mr. Casile intended or knew at a particular time, you may consider evidence about what the defendant said, what the defendant did and failed to do, how the defendant acted, and all the other facts and circumstances shown by the evidence that may prove what was in the defendant's mind at the time. It is entirely up to you to decide what the evidence presented during the trial proves or fails to prove about defendant's state of mind.

(Tr. 11/5/10 at 32).

In the context of the entire charge, the jury instructions covered the issue of lack of intent raised in Casile's theory of defense instruction. The Court had discretion to substitute the

general instructions on intent for Casile's proposal.  In its charge, the Court omitted Casile's proposed gloss that would have limited the jury's consideration to circumstances on a particular date, which was not a correct statement of the law.  Therefore, Casile was not entitled to have his proposal read.   Accordingly, Casile is not entitled to a new trial on this ground.

**VI.    Conclusion**

For the reasons discussed above, the Court will not grant judgment of acquittal, arrest of judgment, or a new trial.  The Court will deny the Motion for Judgment of Acquittal and for New Trial and the Supplemental Motion for Judgment of Acquittal and for New Trial.  An appropriate Order follows.

O:\Criminal Cases\09-668 Casile, US v\Casile - Post Verdict Mot Mem.wpd